UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARTIS E. GORHAM,

        Plaintiff,

    v.

A. SOLIS, et al.,

        Defendants.

Case No.  12-cv-00890-WHO (PR)

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**

**ORDER REFERRING THE ACTION TO JUDGE VADAS FOR SETTLEMENT**

## INTRODUCTION

Plaintiff Artis Gorham claims that his jailors at Salinas Valley State Prison used excessive force against him and then retaliated against him by issuing and processing a rules violation report in violation of 42 U.S.C. § 1983.  Defendants move for summary judgment (Docket No. 54).  There are material facts in dispute on Gorham's excessive force claims against defendants Hernandez and Locke and the retaliation claim against defendant Parin, so the motion is DENIED on those claims.  It is GRANTED on the retaliation claim against defendant Hatton because his only role was to review Gorham's complaint for due process violations, and he did nothing constituting retaliation.  The excessive force claims and the retaliation claim against Parin will be referred to Judge Nandor Vadas for purposes of settlement.

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those

United States District Court
Northern District of California

1  which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

2  248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a

3  reasonable jury to return a verdict for the nonmoving party.  *Id.*

4      The party moving for summary judgment bears the initial burden of identifying

5  those portions of the pleadings, discovery and affidavits which demonstrate the absence of

6  a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

7  Where the moving party will have the burden of proof on an issue at trial, it must

8  affirmatively demonstrate that no reasonable trier of fact could find other than for the

9  moving party.  On an issue for which the opposing party by contrast will have the burden

10 of proof at trial, as is the case here, the moving party need only point out "that there is an

11 absence of evidence to support the nonmoving party's case."  *Id.* at 325.

12      Once the moving party meets its initial burden, the nonmoving party must go

13 beyond the pleadings and, by its own affidavits or discovery, set forth specific facts

14 showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c).  The Court is

15 concerned only with disputes over material facts and "[f]actual disputes that are irrelevant

16 or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  It is not the task of the

17 court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91

18 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with

19 reasonable particularity, the evidence that precludes summary judgment.  *Id.*  If the

20 nonmoving party fails to make this showing, "the moving party is entitled to a judgment as

21 a matter of law."  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

23      In the operative complaint (Docket No. 54), Gorham alleges that (A) correctional

24 officers Locke and Hernandez used excessive force against him; and (B) correctional

25 officers Hatton and Parin retaliated against him by filing and processing a rules violation

26 report.

## I.      Excessive Force Claims

28      Gorham's factual allegations are taken from his deposition transcript.  On May 10,

2

2011, Correctional Officer Hernandez went to Gorham's cell in Facility B at Salinas Valley State Prison to escort him to a medical appointment.  (Defs.' Mot. for Summ. J. ("MSJ"), Gorham Dep. (Docket No. 55) at 10-11.)  He said, "Why aren't you fucking ready?"  (*Id.* at 11.)  Gorham, who had no idea why Hernandez was in a bad mood, said that waist chains were required because he uses a cane.  (*Id.*)  Hernandez left, presumably to retrieve the chains, returned ten minutes later, and said, "Are you fucking ready?"  (*Id.*)  Gorham calmly stated that he was, to which Hernandez said, "Make sure you have your fucking ID."  (*Id.*)

Correctional Officer Sanchez opened the cell door and put the waist chains on Gorham, who according to inmate custom, slid the empty morning food trays out of the cell with his right foot, so that the porters could pick them up on their rounds.  (*Id.* at 11-12.)  Hernandez pushed them back into the cell, saying, "We don't have time for that," and Gorham pushed them out again.  (*Id.* at 12.)  (Gorham insists that the trays did not touch Hernandez either time he pushed it.  (*Id.* at 16, 19).)  Hernandez then grabbed Gorham by the collar, pulled him out of his cell, "slammed him" against another cell, and kicked his left leg three or four times.  (*Id.* at 12.)  He then spun Gorham around and brought him down to his knees.  (*Id.*)  Hernandez called on Sanchez to sound the alarm.  (*Id.* at 24.)  Correctional Officers Locke and Hernandez each took one of Gorham's arms and "drove [him] face first into the wall."  (*Id.* at 12.)  Locke whispered into Gorham's ear, "You fucked up bitch," a statement made, Gorham believes, because Locke thinks he assaulted one of Locke's officers.  Other officers then took Gorham to get medical treatment.  (*Id.* at 12, 28.)

Defendants' version of events differs.  According to Hernandez, after Gorham first pushed out the food trays, Hernandez slid the trays back, saying there was no time for that. (MSJ, Hernandez Decl. ¶ 6.)  Gorham "then looked at me in an aggressive manner and kicked the foot tray back out of the cell."  (*Id.*)  Hernandez "attempted to secure the cell door but Gorham stepped out of the cell, swinging his cane in an aggressive manner."  (*Id.* ¶ 7.)  Sanchez, a control booth officer, sounded the alarm when she saw Gorham kick his

United States District Court
Northern District of California

3

food tray at Hernandez and using his cane to stop Hernandez from closing the door. (*Id.*) Hernandez grabbed Gorham to place him under control, but he "was yelling obscenities at me and attempting to get away from my grasp." (*Id.*) He told Gorham that if he continued to resist, he (Hernandez) "would have to take him to the ground." Gorham said he did not want that because he had a bad shoulder, and agreed to follow orders. (*Id.*) Hernandez held him against the wall next to his cell until other staff arrived. (*Id.*) Hernandez avers that he did not use excessive force, nor did he use force "maliciously and sadistically for the purpose" of causing harm. (*Id.* ¶ 8.)

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton. *Id.* (citing *Wilson*, 501 U.S. at 297); *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993). When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Jeffers v. Gomez*, 267 F.3d 895, 912-13 (9th Cir. 2001). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

Because there is a genuine dispute as to material facts, defendants' motion for summary judgment on the excessive force claims is DENIED. The parties offer crucially different versions of events. Gorham asserts that Locke and Hernandez used excessive force in violation of the Eighth Amendment. He alleges that despite his calm demeanor and compliant manner (apart from pushing the food trays the second time), Hernandez and

United States District Court
Northern District of California

Locke were aggressive, hostile, and unnecessarily violent, violence that included smashing his head into a wall.  These allegations present a situation in which a state prisoner was the victim of a (largely) unprovoked and unnecessary beating resulting in significant pain and bodily injury.

Defendants, however, assert that Gorham was oppositional, failed to comply with orders, and presented a physical threat, to which they responded with appropriate force.  The facts as pled by defendants constitute the type of "good-faith efforts" to maintain prison order that do not give rise to an Eighth Amendment violation. *Hudson*, 503 U.S. at 6-7.

The Court is consequently presented with two diametrically opposed sets of facts, the differences between which directly relate to whether the force used against Gorham was a constitutional violation.  Because Gorham has shown a genuine dispute of material fact as to his Eighth Amendment claims against Hernandez and Locke, defendants' motion for summary judgment as to these claims is DENIED.  The Court will refer these claims for settlement as detailed in the conclusion of this order.

## II.    Retaliation Claims

Parin, the Facility B lieutenant, states that he wrote an incident report on May 11th right after reviewing Hernandez's report on the May 10th incident.  (MSJ, Parin Decl. ¶¶ 4-5.)  He determined that Gorham should be issued a rules violation report ("RVR") for battery on staff.  (*Id.* ¶ 6.)

Gorham disputes this.  He asserts that Parin issued the RVR containing the battery against staff charge as part of a conspiracy to retaliate against him for complaining about Locke and Hernandez.  (Pl's. Opp. to MSJ ("Opp.") at 7, 20.)  Gorham alleges that on May 10th, Parin first decided to charge him with being a disruptive inmate, an allegation supported by Parin's statements to a prison investigating officer.  (*Id.* at 7; Ex. A at 3.)  Then another correctional officer, Stepp, emailed Parin on May 10th to inform him about Gorham's complaints against Locke and Hernandez, an allegation that Stepp confirmed. (*Id.* at 5; Ex. A at 5.)  According to Gorham, Parin changed the charge to battery on staff

on May 11th.  (Opp. at 5, 7.)  Parin, on the other hand, denies that he was aware of Gorham's intention to file a complaint before making  his charging decision.  (MSJ, Parin Decl. ¶ 5.)

When interviewed by a prison investigating officer, Parin stated that on May 10th Hernandez told him that he thought Gorham should be charged with being a disruptive inmate, while Locke said that he should be charged with battery on staff.  (Opp., Ex. A at 3.)  Parin also stated that on May 10th he informed Locke that he had settled on the disruptive inmate charge, based on the verbal descriptions of the incident.  (*Id.*)  In his declaration, Parin says that he spoke with Hernandez on May 10th but did not review his written report until May 11th, after receiving an email from Stepp.  (MSJ, Parin Decl. ¶ 5.)  Parin declares that the written report was the basis for his final charging decision.  (*Id.*)

Pursuant to the RVR, Gorham was placed in administrative segregation, given a rules violation report for battery on a peace officer, and found guilty of the charge.  Later, the charge was reduced to "disruptive inmate" and Gorham's good-time credits were restored.

Hatton, a correctional captain, reviewed the RVR after the guilty finding.  (MSJ, Hatton Decl. ¶ 2.)  As a captain, he is only authorized to review the reports for due process violations.  (*Id.* ¶ 5.)  He lacks the authority to overturn a guilty finding or to reduce the penalty.  (*Id.*)  After concluding that there were no due process violations, he forwarded the report to the Chief Disciplinary Officer for final review.  (*Id.*)

Gorham claims that Hatton's and Parin's actions constituted retaliation against him for complaining about the actions of Locke and Hernandez.  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).  Plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the

"substantial" or "motivating" factor behind the defendant's actions.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Hines v. Gomez*, 108 F.3d 265, 267–68 (9th Cir. 1997).  In order to create a genuine issue of material fact on retaliatory motive in the First Amendment context, a plaintiff must establish "'in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision; (2) evidence that the defendant expressed opposition to the speech; or (3) evidence that the defendant's proffered reason for the adverse action was pretextual.'"  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (internal citation and emphasis omitted).  Also, as to the fourth *Rhodes* element, viz., whether the inmate was chilled from exercising his First Amendment rights, a prisoner-plaintiff must at least allege that he suffered harm more than minimal.  *Id.*, 408 F.3d at 567–68 n.11.

Retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two.  *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (summary judgment proper against plaintiff who could only speculate that adverse employment decision was due to his negative comments about his supervisor six or seven months earlier; retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this").  *See also Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008) (finding no retaliation where plaintiff presented no evidence that defendants gave her a traffic citation after reading a newspaper article about her First Amendment activities, rather than because she drove past a police barricade with a "road closed" sign on it).

Summary judgment will <u>not</u> be granted in Parin's favor.  Gorham has presented evidence showing a genuine dispute whether Parin's actions were retaliatory.  It is undisputed that Parin had first decided to charge Gorham with being a disruptive inmate, based on the verbal summaries he had received from Locke and Hernandez.  Parin admits that after receiving Stepp's mail and reading Hernandez's written report, he decided to charge Gorham with the more significant charge of battery on staff (although Parin asserts

that he did not become aware of Gorham's complaints against staff until after he decided on the higher charge).  Parin's change in decision coupled with the dispute over whether he was informed that Gorham intended to file a complaint against staff raises a genuine dispute whether the action was an adverse action taken against Gorham's protected conduct.  The Court is consequently presented with two diametrically opposed sets of facts, the differences between which directly relate to whether the charging decision was a constitutional violation.  Because Gorham has shown a genuine dispute of material fact as to his First Amendment claims against Parin, defendants' motion for summary judgment as to these claims is DENIED.  The Court will refer these claims for settlement as detailed in the conclusion of this order.

Summary judgment will be granted in Hatton's favor.  Gorham has not provided any evidence to show a genuine dispute as to any material fact.  He offers speculation that the correctional staff, including Hatton, conspired to retaliate against him.  However, the record does not support his allegations.  Hatton did not author the rules violation report, or participate in any of the underlying incidents.  He merely reviewed the RVR decision for due process violations and furthered the processing of the report.  The undisputed facts do not show a nexus between Gorham's allegedly protected speech and Hatton's allegedly adverse actions.  "We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."  *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).  Defendants' motion for summary judgment as to the claims against Hatton is GRANTED.

## MOTIONS

Defendants' motion to file certain documents under seal (Docket No. 66) is GRANTED.  The documents shall remain sealed until the conclusion of this action and any appellate proceedings.  After those proceedings, the documents shall remain sealed until they are destroyed in conformance with the normal records destruction policy of the United States Courts.

Defendants' motion to strike Gorham's unauthorized sur-reply (Docket No. 71) is GRANTED.

United States District Court
Northern District of California

**CONCLUSION**

Defendants' motion for summary judgment (Docket No. 54) is DENIED on the excessive force claims, DENIED on the retaliation claims against Parin, and GRANTED on the retaliation claims against Hatton.  Judgment will be entered in favor of Hatton when this action is concluded.

The Clerk shall TERMINATE defendants A. Solis, J. Stevenson, and B. Sanchez because the claims against them were dismissed in the Order of Service.  (Docket No. 20.)

This action, which now consists only of the excessive force claims against Hernandez and Locke and the retaliation claims against Parin, is REFERRED to Magistrate Judge Nandor Vadas for purposes of settlement pursuant to the Pro Se Prisoner Mediation Program.  The proceedings will consist of one or more conferences as determined by Judge Vadas.  They shall take place within 180 days of the date this order is filed.  Judge Vadas shall coordinate a time and date for the conferences with all interested parties and/or their representatives and, within 180 days after the conclusion of the conference(s), file a report regarding the settlement proceedings.  **Gorham must attend all conferences scheduled by Judge Vadas.  Failure to attend even one conference may result in the dismissal of this action with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.**

The Clerk shall forward a copy of this order to Judge Vadas's chambers, and terminate Docket Nos. 54, 66 and 71.

**IT IS SO ORDERED.**

**Dated:**  March 2, 2015

WILLIAM H. ORRICK
United States District Judge